May it please the Court, good morning. My name is Rupert Birdsong from Ivan MacMillan Wyatt, representing the plaintiff, appellant Rochelle Seabron in this matter. I think the two specific issues that are before the Court that need to be reviewed are whether the plaintiff established a primary facing case and whether the plaintiff established a pretext to defeat the motion for summary judgment. What the district court did was act as a fact finder and resolved all emphases in favor of the moving party and against Ms. Seabron to her detriment so she did not have a chance to develop the evidence and to have her date in court. The most egregious disputed fact which the district court ignored was who was the decision maker who made the decision to terminate Ms. Seabron. Defendants indicated in their responses to interrogatories that Elisa Ellis, also an African-American female, was the person who made the decision to terminate Ms. Seabron. When we deposed Ms. Ellis, she indicated that that decision had been made before she got into her position. This key material fact is important because it is our position that defendants put forth someone who looks like the plaintiff to be the decision maker as a ruse to try to defeat in a discriminatory matter. But that's not even the test. The test is whether similarly situated people were also not treated differently. In this case, we're talking about the people in the pop department who were not affected by the restructuring, whereas the African-American employees in the urban department, they were moved out based on this restructuring. Our contention is that if there was going to be a restructuring, all employees should have been affected, but apparently only the African-American ones were. Ms. Ellis did not evaluate Ms. Seabron. She didn't evaluate her. She was responsible for overseeing her, and in fact, she didn't know her background. However, in the response to interrogatories, they discussed how Ms. Seabron did not have certain types of qualifications, yet when we deposed her, she said that she didn't even know. She didn't know what the person's background was. This is very important because the defendant asserted the position that the person did replace. This is so important. Isn't there evidence that the guy that was hired to replace her had quite a bit more experience and, in fact, an established presence in this new field of what is it, sharing? Mix shows. Mix shows, that's what it is. I have no idea what they are, but I gather... No, I have no idea, but I assume that this is a way of promoting music and that there doesn't seem to be any dispute that this is, in fact, something that would have been important for Columbia to get into. Precisely. But the test is not whether they liked Mr. ironically, Mr. White, an African-American male who was put in that position. The test is whether they had reasons to terminate the plaintiff. I think that's where the... Isn't there sufficient reason to terminate the plaintiff if you want to appoint somebody who might be a better qualified or you believe would do a better job? That would be true in a vacuum, Your Honor. What defendants did is they said, you don't have a job anymore because we are eliminating your position. Therefore, we have no need for your services. Yet, they bring in someone to do exactly what she was doing before. And then even more disturbing, this was a person who, in turn, under the plaintiff, had a pretty good job. He was her mentor. Can you imagine if... He was her mentee. Mentee. I'm sorry. Thank you. Can you imagine if the... I'll watch cartoons. If the Justice League is downsizing and they are trying to get rid of the detective person. So they say, Batman, it's time for you to leave. And then they turn around and they hire Robin to fill in his space. This is someone who has been under Batman. Well, it happens all the time. That's the way life is. Sometimes... Many people think Robin's underrated. I mean, there's nothing strange about that. Sometimes people do better, the mentees do better, and now China mentors. I think what that says is that there's an issue of fact that a jury must decide in terms of whether you indeed wanted to eliminate this position or if you wanted... I don't think that creates an issue of fact. I mean, he goes out, he develops an expertise while she's back toiling away at her old job, he develops expertise in this new area. And either by luck or by canny planning on his part, he becomes an expert or he becomes a presence in this field of whatever this mixed thing is. In part due to Ms. Sebron's tutelage before he got to that position. That's true, but nevertheless, he's got the experience and she doesn't. She does have the experience. She has the experience. She met him. He goes to clubs and he talks to disc jockeys and every night he's out there. And Ms. Sebron did the same as well. She also submitted declarations from DJs in the industry who were also friends of Mr. White. They indicated, yes, she was in the mix. She was doing the shows. She was with them in the clubs. She was doing all these things which defendants say under oath in response to an interrogatory that she didn't have those qualifications. Now, these reasons... I just have a hard time resolving this or seeing this as a race or sex discrimination claim when there is perfectly credible evidence that, in fact, they hired this guy because he had experience. He knew a lot more about this area than she did. Now, you can say, well, she also had experience. That's what employers do. They pick among people who they think are going to promote their business better. And guy they hired, also black, younger maybe. But I just don't see where we've made up a... Is there anything, you know, in the entertainment business particularly, people are constantly getting fired. Everyone's blaming everybody. You don't sell enough records. It's X's fault. And everyone looks for somebody else to blame. They keep changing the heads of the departments and the heads of the studios. There's nothing suspicious about any of that kind of conduct. Is there anything in this case at all that suggests any racial or sexual basis for this action? Well, Your Honor, when they advised her that they were eliminating her position, that is, that they don't have a need for what she did in terms of promoting this type of music, then how do you bring somebody else in to do exactly what she's doing? No, I don't. I have no doubt that they're duplicitous in the entertainment business. You know, they have bad motives when they fire people. They lie about it. All of that. My question is, is there anything that suggests it has anything to do with gender or race? The fact that the defendant was inconsistent with their position as to why they had to let her go. And that is what the jury is to decide. What the district court did was made an evaluation based on the state of the evidence and said, well, you know what, I don't think that she's going to prevail. It seems like a slim case. I'm going to take it out of the jury's hand and I'm going to go ahead and rule. But that's not what the standard is for a motion for summary judgment. As you just mentioned, the emphasis should be drawn in favor of the non-moving party. Now, when they say that we want to eliminate this position and say that she was not replaced, as they indicated, and yet when they have their own documents that says we are now replacing Miss Sebron with Mr. White, then that's inconsistent. And that's what the jury. I mean, it's inconsistent. But what's your best evidence on pretext? I mean, there's a story about All About Eve, which is the, you know, person taking the star's place, and maybe this is a point. What makes this a discrimination case as opposed to a simple retelling of All About Eve? Thank you, Your Honor. The pretext is the stated reason for not having her stay on was that she didn't have the qualifications, she didn't have the contacts, she didn't have the experience in mixed shows. We disputed that ferociously with the declarations from the DJs, from her own declaration indicating what she did and what she performed. When we asked the defendants, well, were there any performance issues? No. Have you even looked at her resume? Have you ever even talked to her about her background? How can they make this assertion in defending their position why they had to let her go when they haven't even reviewed her background? That's completely inconsistent and does not support a rational decision that we've analyzed this and therefore we're going to let you go. They didn't do that. And the jury should be able to decide, okay, defendant, you said that she doesn't have the qualifications. Yet when we ask you what her qualifications are, you don't know. That's something for the jury to determine, well, maybe they just did this arbitrarily. Well, that gets you to a wrongful termination case. But when you get to the jury and you say, we know it was because of race, because, and then what do you fill in the blank with? Because after the restructuring, only African-American employees were affected by it. The white people who worked in the pop department were not affected by this restructuring. Only the African-American ones. And that's where we differ, where defendants contend, well, we brought in somebody black, therefore you can't show a racist discrimination case. No, we're not looking at that. We're looking at the people who remained, the employees who remained at Tony who were not affected by this restructuring.  We don't, we only have one plaintiff here. We don't have everybody else who was affected by the restructuring. We all know why in this particular case. I have no idea what the mix was of white to black on the staff. I don't know whether the number of people affected by this were a handful or a lot. And how do we judge this? I mean, those other cases aren't really before us at all. Well, what is in the record about what Judge Kuczynski just talked about? Is there evidence in the record that only blacks were affected by restructuring and not whites? The declaration of the Seaburn. And what does it say about that? Under paragraph 22. All the persons terminated as a result of the so-called reorganization in December 2001 were African American. Okay. Now answer me the same question, but on your sex discrimination claim. We know that it was done on the basis of sex discrimination because what? Because she was replaced by a male who we believe she was more qualified than. Now, again, I think this is where the district court accepted the defendant's version with regard to Mr. White's qualifications, with regard to his expertise. But again, these are factual issues that a jury should decide. The district court was not allowed to say, okay, Mr. White, let's look at your resume. Okay, Ms. Seaborn, let's look at your resume. We like yours better, and therefore, we're going to take your word for it. That's what a jury is supposed to decide. That's the jury's role, to look at Mr. White, look at his qualifications, look at how he got about this job, look at Ms. Seaborn, her qualifications, what she did, her contacts as well. And the jury has to decide whether there, in fact, was an informed decision as to whether who should have that job. And that's where that is the sex discrimination component. Again, we think it's compelling that Mr. White was under her tutelage and that she showed him the ropes, and therefore, she was eminently more qualified, had more years' experience in the field than Mr. White did. If there are no further questions, I'll wait for a little while. Thank you, counsel. May it please the Court, Garrett Green for Stoney. On the issue of qualifications, Mr. White had been a mixer himself. It's undisputed that Ms. Seaborn had not been a mixer. He had been National Director of Mixed Shows for Priority Records. It's undisputed that Ms. Seaborn had not. He had been on tour with the renowned acts that were involving mixed shows. And it's undisputed that Ms. Seaborn had not. And we submit their evidence as undisputed. She was working for you. I'm sorry? She was working for you. She was working for us, but she was what they wanted to do is focus more on mixed shows. And whether it was right or wrong, that's what they wanted to focus on. And they brought someone in. I'm sure it's common that an apprentice will succeed his or her mentor because it happens all the time. People make it to the Supreme Court after clerking probably for this court or other courts. So it's not unusual for someone to exceed, you know, along the way. So I respectfully submit that in terms of qualifications, the evidence is there to support White as the replacement. Now, in terms of these other two or three persons that my colleagues, my adversary says, were let go also, number one, one of them was Cynthia Johnson Harris. She was replaced by Lisa Ellis. Lisa Ellis is African-American female. So that's one of the three that were listed. And the undisputed evidence that the supplemental excerpts of Record 123, actually excerpts of Record 123, all 17 people in the Urban Music Department were African-American. So to say, oh, there are two other persons who are African-American who were displaced and there were no Whites who displaced doesn't really prove anything. Let me ask you, was this restructuring only of the Urban Music Department? I believe that's what it was focused on. And you say everyone in the department was African-American? All 17, according to the record, were African-American, and that's at 123. I'm not 100 percent about the restructuring question, but I believe that was the focus of it, because that's when Lisa Ellis was promoted. Oh, there's another point there, that they want to have the phantom discriminator here. There's this phantom discriminator and we don't know who this person is. Well, it's either Lisa Ellis, we submit the e-mail shows that she did make the decision, maybe she didn't remember initially, but if it wasn't her, it must have been Charlie Walk, because that's the one who was working with her. Or Charlie Walk was the guy who promoted Lisa Ellis. She's African-American female and he promoted her. There's absolutely no evidence whatsoever of race or gender in this case. It would be hard to imagine what a jury would be told. Ladies and gentlemen, I was fired and it's race. I was fired and it was gender. Well, we have kind of some odd law on the summary judgment in the race discrimination cases here. The whole McDonnell-Douglas formula, which sort of gives you a prima facie case for nothing. Well, we submit when there is a replacement person and the person is of the same race, that that's dispositive. But even if it were not, there is no similarly situated non-African-American who was retained. The best they can point to is Stephanie Harty. Stephanie Harty was in the pop music department. And the evidence is really undisputed that Plaintiff herself had very little experience in pop, no experience in pop music. And that's in our brief at various points. I mean, she tries to put it in her declaration, oh, I was experienced in pop. But all of her jobs involved urban music. So there really is no similarly situated non-African-American who was retained, even if we went to the, which I call the layoff test. And here we're not on the layoff test because we have a replacement. And there's good policy reason for it. It's unlikely that an employer that replaces somebody with a person of the same race or gender is discriminating. It just doesn't make sense for the most part. I don't think there's a case that says that you're home free because you replaced a person with someone of the same race. It may be, if anything, I think there's some cases that say that's not a complete defense. It may be a fact. I think there's, I think you're right, Your Honor. I think that, I think it was the Rose v. Wells Fargo case. I'm not sure if it's that one. One of the cases we cited suggested that, I'll look for it and give it to you at the end, Your Honor, but suggested that where there is a replacement, you know, where there is no replacement, one can look at the layoff test, which is similarly situated, non, persons of non of that protected category. But here, and even in that instance, there isn't any evidence of a similarly situated non-African American. Otherwise, people could certainly always claim that they were discriminated on the basis of race without pointing to anything. There would be no prima facie case. She was a three-year employee, is that right? Yes. She was in there three years? Yes. I don't have anything further unless there's some questions. I'll look for that site, if Your Honors will permit me to point that out at the end. I'd appreciate it. Thank you. Thank you very much. Just briefly, I think the record was clear that Lisa Ellis was not the person who made the decision. What does that buy you? I know you make a big point of it. Let's say it was not she who made the decision. You know, although in organization, sort of my experience, and I think common experiences, there's not sort of a single decision maker. It's often a process of people discussing things at various levels. The immediate supervisor maybe gives input to the higher supervisor. I mean, there's not sort of a single decision maker anyway. But let's say you're right. Let's say, in fact, Lisa Ellis was just a mouthpiece. The decision was made by Charlie Walker or Jim Burris. Yes. Somebody like that, yes. The problem is that defendants asserted that Lisa Ellis was the one who made the decision. And that's when we talk about establishing pretext and different inconsistent decisions. So they did. And maybe they were wrong or maybe they were right or maybe they were confused or maybe they were lying. But let's say, in fact, they wanted to make things look better by claiming it was she who made the decision. And it turns out it wasn't. But where does that get you? I mean, as Mr. Green points out, if it wasn't her, there must have been all these other guys who promoted her. So how much animus can you get from that? Anti-female, anti-black female animus, can you get from that? Again, this would be something for the jury to determine. Promoting one race doesn't mean that they can't discriminate against the same race on another field at another level. I think we can't. You can't just throw it against the wall and see if it's fixed. You've got to make some logical inference. You've got to say, okay, because they claimed the decision was hers and, in fact, the decision was not hers, it was these other guys, here's the rational inference and what can draw from that. I'm still trying to understand what rational inference could a jury draw from the fact that, you know, assuming they find she didn't make the decision but, you know, one of the guys made the decision, what is the rational inference they could draw from that? The inference can be drawn that Sony basically eradicated this urban department that had African-American employees and they put another African-American in a hybrid position over that to try to diffuse any perception of race discrimination. That's exactly what that was. Again, we're still talking about this is something for the jury to decide, not the court. The jury has to decide that. The jury can make that inference. I believe they can. Now, if the court, even if the court says, well, we think it's slim, that still doesn't mean that we lose at SJ. Come back again and tell me about that list that she says, you know, everybody who was terminated was African-American, right? But we don't know anything about those other cases. We don't know whether those were people terminated for stealing. I'm not saying any of them did. I'm just saying, you know, it could be anything. It could be a variety of things, none of which are before us. Can we really draw an inference from the fact that how many people were involved? Three people were involved. Three? Three. Correct. That because you had three people in the wall, the same race, that that shows some sort of racial animus. I think if you look at the whole that African-Americans were affected and you have. What was the racial makeup of the department again? Of the urban department was African-American. And after the restructuring, you basically had urban music now being promoted by white people in the pop department. Kind of like a move. Basically, move black people to the white department. If you're going to fire anybody from that department, could you have fired anybody white if you wanted to? Was anybody white to fire? There's no evidence that any white. I don't believe any white people were fired as a result of the restructuring. Let's see why they fired whites. Were the whites there to be fired? Well, sure. What was the mix in urban music? There weren't any. How many people were fired in this restructuring? My understanding was in terms of the African-Americans, it was three. The total people in the department. Three people were fired in this restructuring? There may have been eight people that were affected. But I'm not recalling right now. But they were all blacks. Black in the urban department, correct. So if you wanted to fire somebody white there, you couldn't do it. Let's say you say, well, we're firing a couple of blacks, so let's fire a white person, too, just to make the numbers look better. You couldn't have done it. There was no one there to fire, right? No, I agree there. So saying everybody who was fired is black is really nothing more than saying several people were fired. It doesn't add anything to say we're black. Well, when we're talking about restructuring. No, but that's a fact, isn't it? That saying everybody who was fired was black doesn't really – it couldn't have been any other way. So long as anybody got fired, they would have had to have been black. But you still can have discrimination in that situation, Your Honor. It can't be that if you hire a department with all blacks, you have them barred from firing anybody no matter what they do, because every time you do it, there will be somebody black and you'll be having 100 percent black firing. I mean, you can't do that. You can't have a rule of law like that. I agree with you there. But in terms of the circumstances, we're talking about eliminating a position that they claim they have no service for and that they bring somebody else in. That's where it is inconsistent. That's where you have a subterfuge. You claim you don't have any need for these services, yet you bring somebody else to do the exact same thing, which you say you don't have need for. That is the discrepancy. That's something that the jury should try to figure out. No, if you fund race discrimination, every time somebody told a lie in Hollywood, you know, it'd be nothing but. The cases say that just because you demonstrate that they're not telling the truth doesn't mean you prove it. I agree with that. But that just means that that's something for me to take to the jury, for me to argue, to say this is what they said, this is what they really meant. You have to figure it out. That's all we're saying. We have to at least have that opportunity to go before a jury to do that. That's the only test with regard to a motion for summary judgment. You may not like my evidence, but at least let the jury take a shot at it. Thank you. Thank you. The case just argued will be submitted. Do you have a case? It was Rose v. Wells Fargo at 1421 that suggests that where there is. You can give it to Gumshe. Thank you very much. Thank you. The Court will stand in recess for the day or adjourn. All rise. The Court will recess and stand adjourned.
judges: Reinhardt, Kozinski, Thomas